# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERIN ELIZABETH ATKINS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-20-1137-AMG |
| | ) |
| KILOLO KIJAKAZI, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY,[1] | ) |
| | ) |
|     Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Erin Elizabeth Atkins ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1382. (Doc. 1). The Commissioner has answered the Complaint and filed the Administrative Record ("AR") (Docs. 13, 16), and the parties have fully briefed the issues. (Docs. 23, 27, 28).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 15, 21). Based

---

[1] Kilolo Kijakazi is the Acting Commissioner of the Social Security Administration and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I.      Procedural History

Plaintiff filed applications in July of 2018 for DIB and SSI, alleging a disability onset date of June 1, 2018.  (AR, at 66, 68, 207, 210).  The SSA denied the applications initially and on reconsideration.  (*Id*. at 126-33, 137-47).  Then an administrative hearing was held on December 12, 2019.  (*Id*. at 170-98).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 12-37).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id*. at 1-6).  Thus, the ALJ's decision became the final decision of the Commissioner.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## II.     The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2018, the alleged onset date.  (AR, at 18).  At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of obsessive-compulsive disorder ("OCD") and anxiety disorder, with panic.[3]  (*Id*.)  At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*.)  The ALJ then determined that Plaintiff had the RFC to:

> perform a full range of work at all exertional levels, but with the following non-exertional functional limitations: understand, remember, and carry out simple and detailed, but not complex or involved, instructions; have no contact and no interaction with the general public; have no more than

---

[3] The ALJ also found Plaintiff's diabetes and obesity were non-severe impairments.  (AR, at 18).

incidental, superficial work-related contact with co-workers and supervisors, defined as brief, succinct, cursory, concise communication relevant to the task being performed; cannot tolerate work traditionally known or classified as "teamwork" type jobs, jobs wherein [Plaintiff] is working in conjunction with, in tandem with, one or more co-workers on the very same job task or duty; cannot tolerate jobs traditionally know[n] or classified as "fast pace" or "production pace" type work; cannot tolerate strict production or performance quotas, jobs wherein she must complete $1/16^{th}$ of the assigned day's work every single half-hour, where there is a set pace from which cannot be deviated, but rather she can vary the pace of work (slow down and then speed up), albeit that all assigned work must be completed by the end of the workday or workweek, whichever is applicable; and may have an average reduction in overall production, including error rate, of no greater than 9% less than that of the average employee.

(*Id.* at 21-22). At Step Four, the ALJ found Plaintiff could not perform any past relevant work. (*Id.* at 29). At Step Five, the ALJ relied on the testimony of a vocational expert ("VE") and found that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as farm worker II, industrial cleaner sweeper, and hand packager. (*Id.* at 31). Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the SSA. (*Id.*)

## III.   Claims Presented for Judicial Review

On appeal, Plaintiff raises four issues. (Doc. 23). She contends the ALJ erred in his consideration of opinions from medical sources and statements from non-medical sources. (*Id.* at 10-14). Plaintiff also asserts the ALJ ignored evidence in the record favorable to a finding of disability. (*Id.* at 5-6). Additionally, Plaintiff argues the ALJ did not properly analyze Plaintiff's symptoms. (*Id.* at 12-15). Finally, Plaintiff contends the

ALJ erred at Step Five because she cannot perform the jobs identified by the VE.[4]  (*Id.* at 7-9).

In response, the Commissioner argues the evidence in the record supports the ALJ's RFC findings.  (Doc. 27, at 6-8).  The Commissioner explains that the ALJ considered the evidence from nonmedical sources and properly explained why he found opinions from medical sources persuasive.  (*Id.* at 8-11).  Further, the Commissioner asserts that the ALJ properly addressed Plaintiff's symptoms in the RFC analysis.  (*Id.* at 12-13).  Finally, the Commissioner argues the ALJ's Step Five findings are supported by the evidence.  (*Id.* at 14-15).

## IV.    The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  A

---

[4] Plaintiff filed a Reply Brief which included new arguments.  First, she contends the ALJ failed to explain why he did not adopt the RFC from Dr. Stephen Scott, Ph.D.  (Doc. 28, at 5).  Plaintiff also argues that the ALJ "invented his own RFC contending that [Plaintiff] could work at a job with an 'error rate of no greater than 9% less than the average employee.'"  (*Id*. at 10) (citing AR, at 29).  Because Plaintiff raised these arguments for the first time in her reply brief, they are waived.  *See Kruse v. Astrue*, 436 F. App'x 879, 885 n.2 (10th Cir. 2011) ("Arguments presented for the first time in a reply brief are waived.").

medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).  To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[5] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant

---

[5] RFC is "the most [a claimant] can still do despite [a claimant's] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id.*  "The claimant is entitled to disability benefits only if [Claimant] is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will

"neither reweigh the evidence nor substitute [its] judgment for that of the agency."  *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## V.     Analysis

### A.     The ALJ Appropriately Considered the Medical Opinions and Evidence From Non-Medical Sources.

Plaintiff contends the ALJ erred in his consideration of two medical opinions – those from Ms. Allison R. West, a licensed professional counselor, and Ms. Angela Upton, an advanced practice registered nurse and certified nurse practitioner.  (Doc. 23, at 9-12).  She also contends the ALJ did not properly consider opinions from non-medical sources – a witness statement completed by her friend, Charessa Svec, and a Third Party Function Report completed by her mother, Judy Atkins.  (*Id.* at 12-14).  For the reasons set forth below, the Court finds the ALJ appropriately considered the medical-source opinions and statements from non-medical sources.

### 1.     Legal Standards For Considering Opinion Evidence.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  An ALJ considers medical opinions using five factors: (1) how much the opinion is supported by

objective medical evidence and explanation; (2) the consistency of the opinion with evidence from other sources in the claim; (3) the medical source's relationship with the claimant; (4) the specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion. *Id.* §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). The ALJ must articulate how persuasive he or she finds a medical opinion. *Id.* §§ 404.1520c(b), 416.920c(b). In doing so, the ALJ is required to explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). But, the ALJ is not required to explain how he or she considered the remaining factors. *Id.* Additionally, when a medical source provides multiple medical opinions, the ALJ must only articulate how he or she "considered the medical opinions . . . from that medical source together in a single analysis." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1); *see also id.* ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").

Social Security regulations categorize "information or statement(s) from a nonmedical source" as "evidence from nonmedical sources." *Id.* §§ 404.1513(a)(4), 416.913(a)(4). An ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources" using the same requirements as a medical source opinion. *Id.* §§ 404.1520c(d), 416.920c(d).

## 2.     The ALJ Appropriately Considered Ms. West's Opinion.

Ms. West wrote that Plaintiff "is working on severe anxiety issues that hinder her ability to function on a daily basis." (AR, at 417). She stated Plaintiff's "recurrent abrupt

and intense fear . . . makes adequate functioning difficult on a daily basis." (*Id.*)  Ms. West continued that "while [Plaintiff] is able to find employment, maintaining the employment is problematic and impossible due to her anxiety." (*Id.*)  Finally, she wrote that Plaintiff's "anxiety has at times rendered her homebound." (*Id.*)

> The ALJ addressed Ms. West's opinion as follows:

> The undersigned does not find [Ms.] West's opinion persuasive.  [Ms.] West is not a vocational expert and would not have practical knowledge about occupations that exist that [Plaintiff] could still perform despite her 'severe' mental limitations and resulting non-exertional functional limitations set forth above.  Further, [Ms.] West did not submit any supporting examinations and or treatment notes to support her opinion.  In addition, [Ms.] West['s] opinion is inconsistent with the other evidence including Dr. Scott's examination and only mild findings.

> Further, her opinion is inconsistent with the other reviewers who held a doctor of philosophy.  Finally, statements on reserve to the Commissioner are inherently neither valuable nor persuasive, therefore we do not provide any analysis about how we considered such evidence in a decision.

(*Id.* at 27) (internal citations omitted).

First, the Court notes that the ALJ properly found the portion of Ms. West's opinion that Plaintiff's ability to maintain "employment is problematic and impossible" was unpersuasive.  Because it is a "statement[] that [Plaintiff is] . . . not . . . able to work[] or able to perform regular or continuing work," it is "is inherently neither valuable nor persuasive."  20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i).

Plaintiff argues "the ALJ did not cite to any specifics" regarding his finding that Ms. West's opinion was inconsistent with Dr. Scott's examination.  (Doc. 23, at 9-10).  But earlier in the opinion, the ALJ thoroughly summarized Dr. Scott's examination and opinion.  (AR, at 25).  From that summary it is clear that the ALJ's finding – that Dr. Scott's

examination and opinion were not consistent with Ms. West's opinion – was appropriately discussed and is supported by substantial evidence.

Plaintiff also contends the ALJ erred when he ignored that Ms. West is an expert in the field of psychology and has practical insight into Plaintiff's mental impairments. (Doc. 23, at 11). The ALJ, however, was not required to articulate how he considered Ms. West's specialization. 20 C.F.R. §§ 404.1520c(b)(2), (c)(4); 416.920c(b)(2), (c)(4).

The remainder of Plaintiff's arguments amount to an improper invitation to reweigh the evidence. Plaintiff contends that Ms. West's statement is consistent with Plaintiff's own statements about the severity of her symptoms, the medical record, and third-party statements. (Doc. 23, at 11). She also contends that the opinion is consistent with portions of Dr. Scott's report as well. (*Id.*)(citing AR 373-375). But the ALJ's consideration of Ms. West's opinion addressed the appropriate factors and is supported by substantial – more than a scintilla – of evidence. The Court will not consider on its own the persuasive value of the opinion. *See Vigil*, 805 F.3d at 1201. Thus, the Court finds the ALJ properly considered Ms. West's opinion.

### 3. The ALJ Did Not Improperly Consider Ms. Upton's Opinion.

In an April 4, 2019, medical report, Ms. Upton wrote: "In my opinion [Plaintiff] can obtain a job but is unable to keep a job for any substantial amount of time. It is also my

opinion that it would be difficult to do even simple jobs secondary to her inability to focus."[6]  (AR, at 399, 408).

The ALJ considered the opinion as follows:

> The undersigned does not find [Ms.] Upton's opinion persuasive.  [Ms. Upton] is not a vocational expert and would not have practical knowledge about occupations that exist that [Plaintiff] could still perform despite her "severe" mental limitations and resulting non-exertional functional limitations set forth above.  Further, statements on reserve to the Commissioner are inherently neither valuable nor persuasive, therefore we do not provide any analysis about how we considered such evidence in a decision.
>
> The undersigned finds [Ms. Upton's] opinion inconsistent with Dr. Scott's, who is a licensed psychologist and tested [Plaintiff].  In addition, her opinion is inconsistent with the other reviewers who held a doctor of philosophy. Despite [Ms. Upton's] lack of mental training and or education, her opinion is not supported by her own examinations of [Plaintiff] noting she was anxious, had some flight of ideas, and symptoms of OCD.  However, she found her insight and judgment intact and did not conduct any full mental status examination.  In addition, her findings of OCD symptoms appeared to be based solely on [Plaintiff's] allegations.  Therefore, the undersigned does not find [Ms.] Upton's opinion persuasive.

(AR, at 27) (internal citations omitted).

The Court first finds the ALJ properly determined Ms. Upton's opinion that Plaintiff is "unable to keep a job for any substantial amount of time" was unpersuasive.  Because it is a "statement[] that [Plaintiff is] . . . not . . . able to work[] or able to perform regular or

---

[6] Plaintiff frames Ms. Upton's opinion as "[Plaintiff] suffered difficulties keeping a job secondary to her OCD and worried about irrational things."  (Doc. 23, at 11) (citing AR, at 404).  The record, however, reflects that Ms. Upton wrote that "[Plaintiff] remembers having some OCD tendencies and worrying about irrational things as a child" and that "[Plaintiff] states she has been unable to hold down a job secondary to her OCD."  (AR, at 404).  Thus, these statements were Plaintiff's own statements regarding her condition, not Ms. Upton's opinions.

continuing work," it is "is inherently neither valuable nor persuasive."   20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i).

The ALJ also properly considered the remainder of Ms. Upton's opinion – that Plaintiff would have difficulty with "simple jobs" due to an "inability to focus."  Plaintiff first argues the ALJ did not "point to any specifics why Ms. Upton's opinion was inconsistent" with Dr. Scott's.  (Doc. 23, at 11-12).  But Plaintiff does not point to any specifics either – instead simply stating "as noted *supra*, Dr. Scott's observations and the record in general are consistent with Ms. Upton's" opinion.  (*Id.* at 12).  To the extent Plaintiff refers to the same arguments she made with regard to Ms. West's opinion, they similarly fail.  Otherwise, the argument fails because "it is not the Court's duty to comb through the record in search of support for [Plaintiff's] factual averments."  *McAdoo v. Vici Cmty. Dev. Corp*, 2020 WL 2529368, at *3 (W.D. Okla. May 18, 2020) (citing *Doe v. Univ. of Denver*, 952 F. 3d 1182, 1191 (10th Cir. 2020)).

Plaintiff also contends the ALJ erred by finding that Ms. Upton's opinion was not supported by her own medical records.  (Doc. 23, at 12).  Specifically, she takes issue with the ALJ's reliance on the finding that Plaintiff's insight and judgment were intact.  (*Id.*)  Plaintiff contends "'judgment and insight' is a limited assessment of an individual's awareness of her own mental health issues and the ability to recognize the benefits of treatment."  (*Id.*)[7]  Thus, Plaintiff claims the ALJ "relied on his own 'medical expertise' to claim that good 'judgment and insight' was anything more than an individual's

---

[7] (citing https://athealth.com/wp-content/uploads/2014/03/Mental_status_B8506_03-14.pdf).

understanding that she is suffering from an illness." (*Id.*)  Plaintiff supplies no evidence that the ALJ relied on this definition of "judgment and insight" and provides no authority requiring using it.  The Court finds the ALJ did not err by considering Plaintiff's intact judgment and insight when determining Ms. Upton's opinion was not supported by the record.  *See, e.g., Trujillo v. Colvin*, 626 F. App'x 749, 752-53 (10th Cir. 2015) (holding that the ALJ gave good reasons – specifically including that the claimant's "insight and judgment that were intact" – for rejecting a doctor's opinion that the claimant could not deal with routine work changes); *cf. Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 628 (10th Cir. 2020) (finding the ALJ properly assessed the claimant's RFC where he cited evidence – including a finding that "memory, judgment, and insight were intact" – to discount alleged symptoms of drowsiness and impaired coherence).

Plaintiff also contends that comparing Ms. Upton's specialization to other reviewers, who have a "Doctor of Philosophy" is irrelevant because a "Doctor of Philosophy holds no special qualifications in any vocational or psychological domain." (Doc. 26, at 12).  Defendant Commissioner contends this was "an obvious clerical error" because Dr. Scott and Dr. Lindsey "held Ph.D's in category '38'" and "as is common in Social Security applications, code 38 designates psychology."  (Doc. 27, at 9-10 n.4).[8] Whether the ALJ's use of the term was a clerical error or an oversight, the Commissioner is correct that the doctors had a psychology specialty.  *See Bubel v. Comm'rs of Soc. Sec.*, 2013 WL 5231217, at *4 n.2 (E.D. Mich. Sept. 17, 2013) ("[I]t is clear . . . that [the doctor]

---

[8] (citing https://secure.ssa.gov/poms.ndsf/lnx/0424501004).

holds a Ph.D. and is a specialist in category '38,' which designates a psychology specialty."); (AR, at 76, 109) (reflecting both Dr. Lindsay and Dr. Scott included "PhD 38" after their names). Thus, Drs. Scott and Lindsay were both more specialized than Ms. Upton, as the ALJ alluded to in his decision. Any error is therefore harmless.

For the reasons stated above, the Court rejects Plaintiff's points of error with regard to Ms. Upton's opinion.

### 4.    The ALJ Sufficiently Considered Reports From Non-Medical Sources.

Plaintiff asserts the ALJ did not properly consider a witness statement completed by Ms. Svec and a Third Party Function Report completed by her mother, Ms. Atkins. (Doc. 23, at 12-14). The Court finds the ALJ appropriately considered the evidence under the governing regulations.

Ms. Svec wrote that Plaintiff can obtain a job, but is not "able to go the first day because she panics over her rituals she has to perform or gets 'stuck' in her rituals and can't leave the house." (AR, at 277). Ms. Svec also described a situation where an ambulance was called for Plaintiff at work and Plaintiff "had to quit [the job] because her anxiety and OCD made her think it would happen again." (*Id.* at 277-78). She also wrote that Plaintiff has difficulty doing household chores because of her rituals. (*Id.* at 278). Ms. Svec further asserts severe weather affects Plaintiff's OCD and anxiety. (*Id.* at 279).

The ALJ considered the report as follows:

> The undersigned read and considered the January 2018 written statement of Ms. Svec. The report of Ms. Svec does not establish that the claimant is "disabled," as defined by the Regulations. Since she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of

14

medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the report is questionable. Moreover, by virtue of the relationship to [Plaintiff], she cannot be considered a disinterested third party whose reporting would not tend to be influenced by the affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleges. Most importantly, such report is not consistent with the opinions and observations by medical doctors in this case and, thus, is not persuasive.

(*Id.* at 29) (internal citation omitted). Although the ALJ addressed Ms. Svec's opinion, Plaintiff asserts the ALJ failed to properly consider it because he failed to apply the factors outlined in *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995). (Doc. 23, at 13). But *Goatcher* outlined the factors an ALJ was supposed to consider when weighing a medical opinion under now-defunct regulations. *Goatcher*, 52 F.3d at 290 (citing 20 C.F.R. § 404.1527, which is effective only for claims filed before March 27, 2017). "The new regulations do not have a standard for how an ALJ must articulate nonmedical evidence," such as Ms. Svec's statement. *Keener v. Saul*, 2021 WL 2460614, at *4 (W.D. Okla. June 16, 2021) (citing 20 C.F.R. §§ 404.1520c(d), 416.920c(d)). Thus, the cited portion of *Goatcher* does not apply. The Court finds the ALJ did not err in his consideration of Ms. Svec's letter.

Plaintiff's mother completed a Third-Party Function Report on August 6, 2018. (AR, at 252-59). She wrote that Plaintiff "cannot keep a job except the prison in Hinton," that Plaintiff can do various household chores but they can take longer due to rituals, Plaintiff can drive around town, and can have difficulty completing tasks and concentrating due to her mental impairments. (*Id.*) The ALJ summarized aspects of the report in the decision, but did not state how persuasive he found it. (*Id.* at 19-20). Plaintiff contends

"the ALJ failed entirely to analyze" the report.  (Doc. 23, at 14).  But because Ms. Atkins is a non-medical source, "the ALJ was not required to articulate how he considered [the report]. He was required only to consider [the report]."  *David L. v. Kijakazi*, 2021 WL 5908368, at *5 (D. Utah Dec. 14, 2021).  Here, the ALJ explicitly considered the report at various points in the decision.  (AR, at 19-20).  Thus, the Court finds the ALJ did not err in considering Ms. Atkins' statement.

### B.     The ALJ Did Not Engage in Improper Picking and Choosing Through the Record.

Plaintiff contends the ALJ erred by failing to discuss portions of the evidence favorable to Plaintiff.  (Doc. 23, at 5-6).  Although the "ALJ is not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, "it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."  *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).  Under this standard, the Court finds the ALJ did not err in his consideration of the evidence.

First, Plaintiff contends the ALJ ignored evidence that Plaintiff "was diagnosed with OCD as far back as 2007" and "her OCD and panic disorder 1998 diagnoses were confirmed with her childhood physician, Dr. Barney Blue."  (Doc. 23, at 5) (citing AR, at 323, 417).  Plaintiff, however, admits that the ALJ found Plaintiff was diagnosed with panic disorder and OCD in 2013. (AR, at 24).  Because the ALJ acknowledged Plaintiff's diagnoses of these conditions in 2013 – five years before the alleged onset date – the Court

16

finds the older diagnoses are not probative.  And, as the Commissioner notes, (Doc. 27, at 8), the ALJ did not state the 2013 diagnoses were Plaintiff's initial diagnoses of OCD or panic disorder.  (AR, at 24).  Thus, the ALJ did not reject the evidence, either.

Plaintiff also asserts the ALJ erroneously found Plaintiff had normal speech at a 2013 examination.  (Doc. 23, at 5).  The applicable progress note indicates Plaintiff's speech was not appropriate because it was anxious, fast, and fearful.  (*Id.* at 343).  Thus, the ALJ did not properly recite the evidence in the decision.  (AR, at 24).  But, the ALJ's summary of the record also included that "examination found her anxious," the practitioner's diagnoses of panic disorder and OCD, and that the practitioner prescribed medication to treat those conditions.  (*Id.*)  Additionally, the ALJ thoroughly addressed references to Plaintiff's anxiety in other medical records closer to the alleged period of disability.  (*Id.* at 20, 24-26).  Based on this summary of the record, the Court finds the ALJ's partially inaccurate summary of the record – from five years prior to the alleged onset date – does not require reversal given the ALJ's otherwise thorough summary of Plaintiff's anxiety.[9]  *See Moore v. Colvin*, 2013 WL 6500524, at *7 (W.D. Okla. Dec. 11, 2013) ("[B]ecause substantial evidence supports the credibility determination, any concerns regarding the ALJ's alleged mischaracterization of the testimony are immaterial."); *Montoya v. Astrue*, 2012 WL 1326677, at *7 (D. Colo. Apr. 17, 2012) ("Although the ALJ misstated when Plaintiff first complained of post-surgery groin pain,

---

[9] Plaintiff also contends the ALJ ignored evidence from this examination regarding her panic attacks after her cousin died and that she was "very anxious."  (Doc. 23, at 5).  Because the ALJ acknowledged Plaintiff's diagnosis of panic disorder and that Plaintiff was anxious, (AR, at 24, 343), the Court does not find the ALJ ignored this evidence.

there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff was not very credible."); *see also Morro v. Berryhill*, 2018 WL 4466035, at *16 (D.N.M. Sept. 18, 2018) ("Ms. Morro fails to explain how the 2008 records, generated five years *before* her alleged onset date, demonstrate that her mental health impairments rendered her disabled during the relevant time period.").

Plaintiff also contends the ALJ ignored various evidence related her medication regimen.  She contends the ALJ noted that Plaintiff took 10 mg of Lexapro and improved, but ignored that Plaintiff required her dose be doubled.  (Doc. 23, at 5) (citing AR, at 24, 26, 382, 401).  Plaintiff also contends that despite the increased dosage of Lexapro, the record indicates that "OCD 'continues to affect her quality of life and ability to sustain a job.'" (Doc. 23, at 5-6) (quoting AR, at 410).  Plaintiff also notes Lexapro was discontinued on April 22, 2017, because it no longer worked.  (Doc. 23, at 6) (citing AR, at 359).  Finally, Plaintiff argues the ALJ ignored a record wherein Plaintiff advised her practitioner she wished to stop her current medication as her anxiety was not well controlled.  (Doc. 23, at 6) (citing AR, 351-53).  But the ALJ discussed these records in the decision.  The ALJ referenced a medical record stating that "[Plaintiff's] anxiety was noted to be much improved and she was **continued on 20mg Lexapro**."[10]  (AR, at 25) (emphasis added)

---

[10] The Court notes that in the ALJ's discussion of the previous record from the same provider, he noted that Plaintiff "was continued on 10mg Lexapro."  (AR, at 25) (citing *id.* at 363-65).  But that record was internally inconsistent – the "prescriptions" section noted a 10mg dose of Lexapro and the "current medications" section noted a 20mg dose of Lexapro.  (*Id.* at 363-64).  The ALJ correctly noted the increased, 20mg dosage in his discussion of the next record (which included the 20mg dosage in both sections).  (*Id.* at 25) (citing *id.* at 366-68).

(citing *id.* at 366-68).  Further, the ALJ noted that Plaintiff "continued OCD" despite an improvement with her anxiety.  (AR, at 26) (citing *id.* at 409-13).  The ALJ wrote that Plaintiff "stated the Lexapro was no longer working" and that her practitioner "prescribed her 20mg Celexa."  (AR, at 24) (citing *id.* at 359-61).  The Court also notes that the ALJ's summary of the record accurately reflects that Plaintiff resumed taking Lexapro at some point later in the year.  (*Id.* at 25).  And the ALJ stated: "On January 9, 2017, [Plaintiff] returned to HOUCFP stating she wanted to stop Paxil and try something different because her anxiety was not well controlled."  (AR, at 24).

Plaintiff also contends the ALJ did not address that her mental health deteriorated and her OCD and anxiety were "out of control."  (Doc. 23, at 6) (citing AR, at 356, 359).  The ALJ referenced this evidence too, noting that "by April 22, 2017, [Plaintiff] reported her anxiety and OCD symptoms had returned and were out of control."  (AR, at 24).  Further, Plaintiff contends the ALJ ignored a record indicating she had "not recently been to the clinic because she ha[d] been irrationally fearful of storm season, and thus it is unclear how much medications have improved her life" and that "[Plaintiff's] OCD continues to affect her ability to sustain a job." (Doc. 23, at 6).  But the ALJ referenced this record, noting that "[Plaintiff] returned to HOUCFP on July 11, 2019 stating she had not been into the clinic recently due to storm season."  (AR, at 26).  Contrary to Plaintiff's assertion, the record does not state "it is unclear how much medications have improved her life."  (*Id.* at 409-13).  Instead, the ALJ accurately noted that Plaintiff "reported improved anxiety with Lexapro, but continued OCD."  (*Id.* at 26) (citing *id.* at 409-13).  The ALJ also noted that the practitioner, Ms. Angela Upton, APRN, CNP, "opined that [Plaintiff]

19

was capable of obtaining a job, but unable to keep a job for any substantial amount of time." (*Id.* at 26).

Finally, Plaintiff argues that "at best, the [record] citations the ALJ provided indicate that [Plaintiff's] medications allow her symptoms to wax and wane at times." (Doc. 23, at 6). Here, the ALJ found Plaintiff generally "had improvement of her symptoms with medication." (AR, at 26). This finding is supported by more than a scintilla of evidence.

### C.      The ALJ Appropriately Considered Plaintiff's Symptoms.

Plaintiff contends the ALJ did not properly consider her symptoms.[11] (Doc. 23, at 12-15). When evaluating a claimant's subjective symptoms, an ALJ must consider: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant has received; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. *See* Social Security Ruling ("SSR") 16-3p: Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *7-8 (S.S.A. Oct. 25, 2017).

---

[11] Plaintiff includes her arguments regarding Ms. Svec's and Ms. Atkins' third-party statements in this section of her argument. The Court addressed those issues above. *See supra*, § V.A.4.

The ALJ must determine whether the claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." *Id.* at *7.[12]  If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.*  Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Zhu v. Comm'r, SSA*, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021); *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008).  Provided the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (quotation marks omitted).  "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*  Furthermore, the ALJ is entitled to resolve evidentiary conflicts. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016).

---

[12]     This evaluation, previously termed the 'credibility' analysis, is now termed the 'consistency' analysis. *See* SSR 16-3p (superseding SSR 96-7p).  In practice, there is little substantive difference between a 'consistency' and 'credibility' analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit).  Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

*Tina G.B., v. Kijakazi*, 2021 WL 3617449, at *3, n.2 (N.D. Okla. Aug. 16, 2021).  *See also Olson v. Comm'r, SSA*, 843 F. App'x 93, 97 n.3 (10th Cir. 2021) ("The Commissioner no longer uses the term 'credibility' in evaluating a claimant's statements.  The analysis, however, remains substantially the same.") (internal citation omitted).

Plaintiff generally argues "the ALJ did not perform even the minimal discussion of the credibility/consistency factors." (Doc. 23, at 14). The Court disagrees. The ALJ thoroughly summarized Plaintiff's allegations in her Disability Report and hearing testimony. (AR, at 22-24). The discussion included evidence related to the appropriate factors – including her daily activities, the duration and frequency of her symptoms, medication used to treat her conditions, and factors that precipitate her symptoms. (*Id.*) Although the ALJ did not engage in a factor-by-factor analysis, he clearly laid out the evidence he relied upon. Thus, the Court finds the ALJ engaged in an adequate discussion of the appropriate factors. *See Keyes-Zachary*, 695 F.3d at 1167.

Plaintiff also argues the ALJ did not properly consider her activities of daily living. (Doc. 23, at 14-15). She asserts that while the ALJ noted that Plaintiff could do certain activities – such as go out alone, drive, and shop for groceries – those "activities are time consuming and cause a lot of agitation an anxiety." (*Id.* at 15). For example, she contends "she fears driving on the highway." (*Id.*) (citing AR, at 261). The Court finds the ALJ did not mischaracterize Plaintiff's ability to perform daily activities. Indeed, the ALJ considered Plaintiff's alleged limitations in those areas by noting, for example, that Plaintiff stated "she could not drive to far places due to anxiety" and that she "sometimes needed someone to accompany her" to the store due to anxiety. (AR, at 23). Thus, the Plaintiff's contention of error is not well founded.[13]

---

[13] Contrary to Plaintiff's argument on reply, the ALJ did not "find [Plaintiff] is capable [of] working . . . simply because she can 'understand' or go to a store." (Doc. 28, at 9).

Plaintiff also generally asserts the ALJ "failed to support his consistency finding with adequate evidence derived from the record.[14]  Plaintiff argues the ALJ could not have "properly considered" the relevant factors "in light of all the ALJ's errors . . . and the evidence overwhelms the ALJ's consistency finding."  (Doc. 23, at 14).  Thus, Plaintiff argues that "the ALJ's determination is nothing more than an erroneous conclusion in the guise of findings." (*Id*. at 14-15).  The Court, however, did not find any errors in the other aspects of the decision.  And by asserting that her "symptoms are consistent with the medical findings and the rest of the record," Plaintiff essentially asks the Court to reweigh the evidence – which the Court cannot do.  *See Vigil*, 805 F.3d at 1201.

### D.     The ALJ Did Not Commit Reversible Error at Step Five.

Plaintiff argues she cannot perform the work required by the jobs the ALJ identified at Step Five.  (Doc. 23, at 7-9).  The Commissioner asserts the ALJ's Step Five findings are supported by the evidence and do not require reversal.  (Doc. 27, at 14-15).  The Court finds the ALJ did not commit reversible error at Step Five with regard to his finding that jobs existed in significant numbers in the national economy that Plaintiff can perform.

The ALJ found Plaintiff "cannot tolerate jobs traditionally know[n] or classified as 'fast pace' or 'production pace' type work" and

> cannot tolerate strict production or performance quotas, jobs wherein she must complete 1/16th of the assigned day's work every single half-hour, where there is a set pace from which cannot be deviated, but rather she can

---

[14] Plaintiff also argues that "given her pace limitations, the ALJ should have properly considered whether Claimant was capable of engaging in substantial gainful activity." (Doc. 23, at 15).  That is what the ALJ did – he appropriately considered the evidence before him and determined Plaintiff was capable of performing jobs that exist in significant numbers in the national economy.  (AR, at 15-32).

vary the pace of work (slow down and then speed up), albeit that all assigned
work must be completed by the end of the workday or workweek, whichever
is applicable.

(AR, at 21-22).  Plaintiff contends that the RFC is internally inconsistent because requiring
Plaintiff to complete all assigned work by the end of the workday or workweek is
essentially a quota.  (Doc. 23, at 7).  The Court disagrees.  The ALJ did not restrict Plaintiff
from quotas in general, he limited Plaintiff from "**strict** production or performance quotas."
(AR, at 21) (emphasis added).  By "strict," the ALJ explained that Plaintiff could not adhere
to a requirement that she complete 1/16th of the day's assigned work every half hour.  (*Id.*)
Thus, requiring Plaintiff to complete a certain amount of work at the end of a workday or
workweek is not at odds with no strict production or performance quota as defined by the
ALJ.

Plaintiff also argues she cannot perform all the hand packager jobs available
national economy.  (Doc. 23, at 7-8).  The Dictionary of Occupational Titles ("DOT") entry
for hand packager notes that jobs "may be designated according to whether high-
production or small-lot packaging."   DOT 920.587-018, 1991 WL 687916.  Plaintiff
contends that the ALJ should have reduced "the numbers of this position appropriately"
because Plaintiff cannot perform high-production work.[15]  (Doc. 23, at 8).  She contends
that because she "cannot perform at least one of the jobs the [VE] and ALJ found for her,

---

[15] The VE testified that the number of farm worker II jobs a hypothetical individual with
Plaintiff's RFC could perform was reduced by 20% from those available in the national
economy due to the "pace needed to load the trucks and so forth."  (AR, at 62).  The ALJ
adopted this finding, noting that Plaintiff could perform only 209,600 of the 262,000 farm
worker II jobs available nationally.  (*Id.* at 31).  Neither the VE nor the ALJ reduced the
amount of hand packager jobs Plaintiff could perform.

remand is required for the ALJ to reconsider the significant number inquiry at Step Five."
(*Id.* at 9).

If the ALJ erred, such error is harmless.  The Tenth Circuit has "held an ALJ's erroneous inclusion of some jobs to be harmless error where there remained a significant number of other jobs in the national economy."  *Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016); *see also* 42 U.S.C. § 423(d)(2)(A) (stating that a claimant is not disabled if he can engage in "work that exists in significant numbers" in the national economy).  The ALJ found 209,600 farm worker II jobs and 88,000 industrial cleaner sweeper jobs are available nationally.  A total of 297,600 jobs available in the national economy is sufficient to satisfy the "significant numbers" standard.  *See Shockley v. Colvin*, 564 F. App'x 935, 940 (10th Cir. 2014) (holding "any possible error . . . was harmless" because no "reasonable factfinder . . . could have determined that suitable jobs did not exist in 'significant numbers'" where there were 215,000 jobs available nationally in the remaining jobs); *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (holding no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers" where 152,000 jobs were available nationally).  Thus, even assuming Plaintiff could not perform any hand packager positions, more than enough farm worker II and industrial cleaner sweeper jobs are available for the Court to find harmless error.

Plaintiff also argues that "the jobs provided generally cannot be performed by [Plaintiff] as they all require a certain amount of production that can result in a stressful environment according to the DOT job descriptions."  (Doc. 23, at 8).  In support, she contends "the terms 'fast paced' and 'high stress' are often used together."  (*Id.*)  But the

DOT descriptions of the jobs identified by the ALJ do not include references to "fast paced" or "high stress."[16]  DOT 407.687-010, 1991 WL 673347 (farm worker II); DOT 920.587-018, 1991 WL 687916 (hand packager); DOT 389.683-010, 1991 WL 673279 (industrial sweeper cleaner).  Plaintiff also asserts that "fast paced" and "production pace" have been used synonymously.  (Doc. 23, at 8).  But only the hand packager DOT entry references "high-production," and as noted above, any error with regard to the hand-packager position alone is harmless.  DOT 920.587-018, 1991 WL 687916 (hand packager).

Finally, Plaintiff notes that "simple and repetitive" and "free of fast-paced" have been "equated elsewhere."  (Doc. 23, at 8) (citing *Black v Comm'r of SSA*, 2012 U.S. Dist. LEXIS 140155, at *42-43 (N.D. Ohio 2012).  But the two terms were not "equated" in *Black* – the RFC simply included restrictions limiting the claimant to both "simple, routine, and repetitive tasks" and "a work environment free of fast paced production requirements." *Black*, 2012 U.S. Dist. LEXIS 140155, at *38-39.  *Black* does not stand for the proposition that limiting a claimant to less than fast-paced work means that she cannot perform simple and repetitive tasks.

For the reasons stated above, the Court finds the ALJ did not commit reversible error at Step Five.

---

[16] Plaintiff argues that "given [her] documented OCD issues that interfere with her pace and ability to maintain employment, the ALJ should have posed a hypothetical question to the [VE] that accounted for her inability to cope with high-stress employment."  (Doc. 23, at 8-9).  This argument essentially asks the Court to reweigh the evidence, which it cannot do. *See Vigil*, 805 F.3d at 1201.

## VI.    Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative

hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned

**AFFIRMS** the decision of the Commissioner for the reasons discussed above.

**SO ORDERED** this 31st day of March, 2022.


AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE